# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH
# CIVIL ACTION NO. 5:17CV-P44-GNS

WILSON REESE CLARK                                                          PLAINTIFF

v.

KAREN RAMEY *et al*.                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Wilson Reese Clark filed the instant *pro se* 42 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on Defendants' motion to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) (DN 31). For the reasons stated below, the motion will be denied.

## I. ALLEGATIONS OF COMPLAINT

Plaintiff, a former inmate of the Kentucky State Penitentiary (KSP), sues the following Defendants: Karen Ramey, identified as an ARPN at KSP; Bruce Bauer, Amber Switzer, and Tosha Winn, identified as nurses at KSP; and Jill Shelton and Heather Holland, identified as employees of Correct Care Solutions.

In the complaint, Plaintiff alleges that he was injured on October 30, 2016, and requested treatment for his back and pointer finger on his right hand. He states that he was escorted by two corrections officers who witnessed his injury to medical. He asserts that he was seen by a non-Defendant nurse who called Defendant Ramey and told Ramey "that my finger looked broken and I was walking hunched over." He states that the non-Defendant nurse also "asked Bruce Bauer could she give me something for the pain until Karen Ramey got their. He said 'No, he'll be all right. He probably faking away.'" Plaintiff states, "Mrs. Karen Ramey never showed up, I

was left to deal with the pain." Plaintiff asserts that when he went to the nurse's station the next day he was told to come back by Defendant Ramey and "by Nurse Bruce Bauer who openly expresses his dislike for people of color." The following day, Plaintiff reports that he was told by Defendants Shelton, Bauer, and Ramey that they were not going to treat his injuries.

Plaintiff further states, "I seen a inmate who was white, have the same injuries as me and he'll get top of the line treatment. As for people of color we have to settle for what we can get." Plaintiff asserts, "Sinse Bruce Bauer has been a nurse he does not tolerate nurse's treating black inmates. So due to Bruce Bauer telling staff not to treat black inmates is the reason why nurses refuse to treat me." Plaintiff alleges that he has "filed many grievances on the situation and the staff tell me if I file another grievance I will be placed in the segregation unit under investigation. Since then I've been placed on grievance restriction." Plaintiff states, "My hand/finger is still broken and my lower back still cause's me pain. Medical will not treat me without Bruce Bauer's permission."

Plaintiff also reports an incident which occurred on January 31, 2017. He states that he was placed in segregation "for filing grievances on staff in Medical." According to the complaint, Defendant Holland and another non-Defendant officer found him lying on the floor of his cell "non-responsive." He states, "Nurse Holland said, 'he's not normal anyway' this was heard by my neighbor . . . Michael Cooper who later told me what was said. She also said 'He's probably just faking like most black inmates do to get the nurse over here. I'll come back and check him if Bruce Bauer tells me to.'" Plaintiff asserts that 30 to 40 minutes later another corrections officer found him lying on the floor in the same position and called medical to report a medical emergency. Plaintiff states that it took ten to fifteen minutes for medical to come to his cell and another five minutes to take his blood pressure. He states that his blood pressure

2

reading was 220/120 and that the nurse, identified in a grievance attached to the complaint as Defendant Holland, "didn't know what to do. She ended up calling [D]octor [F]orte for further instructions."

Plaintiff also describes another incident which occurred on February 20, 2017. He states that he was "placed back in segregation due to staff retaliation for exercising ('to petition the government for a redress of grievances') My 1st Amendment right[.]" He alleges that his blood pressure was high, he was feeling light-headed, and his left arm and left jaw were numb. After a corrections officer called medical and Plaintiff waited 30 to 35 minutes for medical personnel to come to his cell, he was put in shackles to go to medical but could not walk and "again got lightheaded and fell-out." He was taken back to his cell where he was made to stand and wait for the nurse and "almost fell on his face while my hands were restrained behind my back." He states, "Nurse Switzer & Tosha Wynn showed up 15 minutes later. They comments about they shouldn't made to help anyone they didn't want to, especially not 'niggers.' A few inmates heard these comments and started to cuss Nurse Switzer & Wynn. They openly speak racial epithets."

Plaintiff summarizes his claims as follows:

All staff mentioned herein violated herein violated my 1st 4th 5th and 8th All staff mentioned in this complaint shown deliberate indifference to a serious medical need, all staff refused answer sick call slips and medical grievances. All medical staff left me to suffer cruel & unusual pain as punishment for filing grievance, and last all staff mentioned shown racial discrimination because I am a Asiatic black man seeking medical treatment.

Upon initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007), the Court dismissed some claims and allowed the following § 1983 claims to proceed against all Defendants in their individual capacities: an Eighth Amendment claim for

deliberate indifference to serious medical needs; a Fourteenth Amendment Equal Protection claim in connection with Plaintiff's allegations of discrimination; and a First Amendment retaliation claim.

## II. STANDARD

Courts apply the same standard under § 1915A as they do when addressing a motion under Fed. R. Civ. P. 12(b)(6). *Moniz v. Cox*, 512 F. App'x 495, 497 (6th Cir. 2013); *Wilder v. Collins*, No. 2:12-cv-0064, 2012 U.S. Dist. LEXIS 64231, at *12-13 (S.D. Ohio May 8, 2012) ("When a complaint is screened under § 1915A, it is subjected to the same scrutiny as if a motion to dismiss for failure to state a claim had been filed under Fed. R. Civ. P. 12(b)(6)."). As another district court stated, "[A] motion to dismiss under Rule 12(b)(6) is almost never an appropriate response when the court has already screened a prisoner complaint pursuant to 28 U.S.C. § 1915A(b) and directed the defendant to respond." *Moreno v. Beddome*, No. CV 11-2333-PHX-DGC, 2012 U.S. Dist. LEXIS 107901, at *4 (D. Ariz. Aug. 2, 2012).

Under both § 1915A and Fed. R. Civ. P. 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," yet must provide

4

"more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (citing *Twombly*, 550 U.S. at 555). In addition, "[a] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). With the foregoing in mind, the Court will address the merits of the instant motion.

### III. ANALYSIS

#### *A. Equal Protection*

Defendants first argue that Plaintiff's Fourteenth Amendment Equal Protection Claim should be dismissed because his allegations that Defendants refused to treat him because of the color of his skin relies only on unsupported legal conclusions. They argue that the complaint and attachments contradict his claims in that Plaintiff acknowledges in the complaint that he received medical treatment for his complaints of high blood pressure. They point to Plaintiff's attached grievances, and omissions therein, which they claim show that Plaintiff did in fact receive treatment. Defendants argue that "Plaintiff fails to offer any evidence other than conclusory statements of discrimination by the Defendants, and further fails to offer any evidence that he suffered an injury due to the alleged discrimination."

Construing the complaint in the light most favorable to Plaintiff, as the Court is required to do at the pleadings stage, *see Boag v. MacDougall*, 454 U.S. 364 (1982) (per curiam), Plaintiff alleges that Defendant Bauer "openly expresses his dislike for people of color" and that Defendants Shelton, Bauer, and Ramey told him that they were not going to treat his injuries from the October 30, 2016, accident. He also states, "I seen a inmate who was white, have the same injuries as me and he'll get top of the line treatment. As for people of color we have to settle for what we can get." Plaintiff further asserts, "Sinse Bruce Bauer has been a nurse he

does not tolerate nurse's treating black inmates. So due to Bruce Bauer telling staff not to treat black inmates is the reason why nurses refuse to treat me." Plaintiff states that Defendant Holland failed to give him needed medical treatment on January 31, 2017, and that she "said 'He's probably just faking like most black inmates do to get the nurse over here. I'll come back and check him if Bruce Bauer tells me to.'" Plaintiff also states that when he needed medical treatment on February 20, 2017, Defendants Switzer and Wynn made "comments about they shouldn't made to help anyone they didn't want to, especially not 'niggers.' . . . They openly speak racial epithets."

Upon review of the above allegations, the Court finds that Plaintiff has alleged sufficient facts in support of his Equal Protection Claim to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556), based on Defendants' alleged refusal, at least initially, to render medical treatment to Plaintiff because of his race. Therefore, the Court will deny Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss this claim.

### *B. Deliberate indifference*

Defendants also argue that Plaintiff's deliberate indifference claim should be dismissed. They argue that the complaint and attachments "contradict that his alleged broken finger and pain of October 30, 2016 is a presently existing condition for which he was not treated." They maintain that Plaintiff's attached grievances and appointment cards are silent as to any complaints of a broken finger or back pain.[1] Defendants also maintain that Plaintiff "fails to plead any detrimental effect of the alleged delay in medical treatment and fails to produce verified medical evidence to support his deliberate indifference claim against the Defendants."

---

[1] The Court notes that the two appointment cards attached to the complaint dated February 9 and 10, 2017, both state, "INDEX FINGER SWOLLEN" as the reason for the appointment.

Once again, at this pleading stage, the Court must construe the complaint in the light most favorable to Plaintiff. Plaintiff states, "My hand/finger is still broken and my lower back still cause's me pain. Medical will not treat me without Bruce Bauer's permission." Plaintiff's statement in his complaint that these medical issues persist are not negated by the grievances or other documents attached to his complaint. Therefore, the Court finds that Plaintiff has stated sufficient factual allegations to maintain his Eighth Amendment deliberate indifference claim related to the injuries to his finger and back.

With regard to Plaintiff's allegations of Defendants' failure to treat his incidents of high blood pressure, the complaint alleges that on two occasions Plaintiff was suffering from high blood pressure causing him to lose consciousness or become so lightheaded he "fell-out"; that Defendants were made aware of his condition; and that they intentionally failed to treat him. Defendants argue that Plaintiff's deliberate indifference claims should be dismissed because he failed to establish evidence of a detrimental effect of the delay in treatment. However, a Fed. R. Civ. P. 12(b)(6) motion tests the sufficiency of the allegations, *see Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014), and not a plaintiff's evidence. The Court finds that this issue would be better addressed on summary judgment after discovery is conducted at which time Plaintiff's medical records can be used to show what treatment Plaintiff did or did not receive. *See Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir. 2007) (affirming denial of summary judgment when delay caused plaintiff six extra hours of pain and dangerously elevated blood pressure for no reason); *Boldon v. Claiborne Cty. Det. Ctr.*, No. 2:16-CV-225-TWP-MCLC, 2017 U.S. Dist. LEXIS 150620, at *16 (E.D. Tenn. Sept. 18, 2017) (declining to dismiss under § 1915A and finding "that high or ever-increasing blood pressure could constitute a serious medical need") (citing *Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 729, 737 (6th Cir. 2015));

*Autman v. Durant*, No. 2:08-cv-87, 2008 U.S. Dist. LEXIS 53050, at *10 (W.D. Mich. July 11, 2008) ("[T]he court notes that Plaintiff's claim regarding the repeated delays in giving Plaintiff his prescribed high blood pressure medication are not clearly frivolous and may not be dismissed upon initial screening.").

Accordingly, Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss Plaintiff's deliberate indifference claim will be denied.

### C. Retaliation

Defendants next argue that Plaintiff's retaliation claim must be dismissed because Defendants were not involved in Plaintiff's inmate grievances and did not place Plaintiff in segregation. Citing to several Kentucky Administrative Regulations and Kentucky Department of Corrections Policies and Procedures, they argue, "All named Defendants are medical personnel who lack the authority to place inmates in the segregation unit; none of the Defendants were members of the Adjustment Committee or were Mr. Clark's Adjustment Officer."

Plaintiff alleges in the complaint that he has "filed many grievances on the situation and the staff tell me if I file another grievance I will be placed in the segregation unit under investigation. Since then I've been placed on grievance restriction." He states that he was placed in segregation "for filing grievances on staff in Medical." Plaintiff also alleges, "All medical staff left me to suffer cruel & unusual pain as punishment for filing grievance . . . ."

Construing the *pro se* complaint broadly, the Court finds that Plaintiff has alleged sufficient facts in support of his retaliation claim to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, the motion to dismiss Plaintiff's retaliation claim will be denied.

8

### D. Failure to exhaust administrative remedies

Defendants also argue that the complaint should be dismissed because Plaintiff failed to show that he has exhausted his administrative remedies by completing the grievance appeals process. The Prison Litigation Reform Act (PLRA) bars a civil rights action challenging prison conditions until the prisoner exhausts "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court"). In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Importantly, however, "failure to exhaust administrative remedies under the PLRA is *an affirmative defense that must be established by the defendants*." *Napier v. Laurel Cty. Ky.,* 636 F.3d. 218, 225 (6th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. at 204) (emphasis added).

Here, Defendants have not met their burden. They have not attached an affidavit to their motion showing that Plaintiff failed to file a grievance or grievance appeal related to the matters at hand or to produce a copy of the relevant grievance procedure. Both would require the Court to consider materials outside the pleadings, which is not permissible at this stage. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). Plaintiff was not required to demonstrate exhaustion in his complaint, and he advises in his response to the motion to dismiss that he "has followed the necessary steps to continue seeking the Relief sought by 'Exhausting' All of his Administrative Remedies through proper procedures as the Grievance Mechanism requires." Plaintiff also attaches grievance

appeals to his response to the motion, which indicate that he did in fact exhaust his administrative remedies. Therefore, the Court will deny Defendants' Fed. R. Civ. P. 12(b)(6) motion on this basis.

## IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (DN 31) is **DENIED**.

In addition, Defendants filed a motion to amend the Scheduling Order in the event their motion to dismiss was denied. **IT IS ORDERED** that the motion to amend the Scheduling Order is (DN 22) is **GRANTED**. Plaintiff is now a non-prisoner, and the Court will enter a separate Order governing scheduling in this matter.

Date: February 8, 2018

**Greg N. Stivers, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Counsel of record
4416.010